562 A.2d 300

Jessie L. **FARAGO** and Sandor L. **Farago**, Appellants,

v.

**SACRED HEART GENERAL HOSPITAL**, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 25, 1988.

Decided July 10, 1989.

Peter C. Gardner, Philadelphia, for appellants.

Allan H. Starr, Donald F. Ladd, Philadelphia, for Sacred Heart Hosp.

Arthur K. Hoffman, Harrisburg, for amicus—Hospital Assoc. of Pa.

Jonathan Vipond, III, Camp Hill, for amicus Pa. Assoc. of Private Psychiatric Hospitals.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

OPINION

McDERMOTT, Justice.

Appellants, Jessie L. and Sandor L. Farago, her husband, appeal from the order of the Superior Court[1] which affirmed the order of the Court of Common Pleas of Delaware County. The latter court denied appellants' post-verdict motions which were filed following an adverse jury verdict rendered in their lawsuit against appellee, Sacred Heart General Hospital.

The pertinent facts surrounding this appeal are as follows. In the early hours of October 14, 1982, Jessie Farago, at the time a thirty-two (32) year old mechanical engineer, was admitted voluntarily to the psychiatric unit of Sacred Heart General Hospital in Chester, Pennsylvania. Mrs. Farago, who was approximately three months pregnant, had a history of mental illness dating back to her college years. That morning Mrs. Farago experienced an acute exacerbation of her chronic schizophrenic condition. This episode prompted her husband to seek her admission at Sacred Heart.

After the initial evaluation by the admitting nurse and telephone consultation with the on-call psychiatrist, it was determined that Mrs. Farago did not require special observation. Routine orders, which included hourly physical checks, were prescribed by the staff.

The psychiatric unit at Sacred Heart is an open co-ed ward housed within the main building and designed to accommodate approximately twenty-two (22) patients. At around lunchtime, Mrs. Farago maintains that she was raped by a male patient in the bathroom that adjoined a

---

1. *Farago v. Sacred Heart General Hospital,* 365 Pa.Super. 1, 528 A.2d 986 (1987).

room on the ward referred to as a "quiet room." [2] Mrs. Farago and the male patient were discovered in the bathroom together after the incident by a physical plant superintendent. He in turn immediately contacted a mental health aide stationed on the floor. Mrs. Farago mentioned the incident to the aide in passing, however, she did not indicate that she had been raped by the patient. It was not until three days later that she claimed to another staff member that she was raped by this patient. Approximately eighteen days later Mrs. Farago informed her husband of this incident. In the meantime, her condition failed to stabilize and she began treatment with an anti-psychotic drug. The possible effects of this drug necessitated that Mrs. Farago undergo a therapeutic abortion at the Delaware County Hospital.

The Faragos instituted a civil action against Sacred Heart seeking compensatory and punitive damages for, *inter alia*, alleged negligence on the part of the hospital for failing to adequately supervise and protect Mrs. Farago while she was in the unit. The case proceeded to trial in the Court of Common Pleas of Delaware County before the Honorable Clement J. McGovern, Jr. and a jury of twelve. At the close of the evidence, the trial court instructed the jury to apply a willful misconduct or gross negligence standard to this case reasoning that Sacred Heart was entitled to limited immunity pursuant to Section 114 of the Mental Health Procedures Act (hereinafter "MHPA").[3] The jury returned a verdict in favor of the hospital. Appellants filed post-verdict motions with the court, which were denied. On appeal, the Superior Court affirmed the judgment and held that the trial court did not err in deciding that absent willful misconduct or gross negligence, Sacred Heart was entitled to the limited immunity afforded to it under the Act. Appellants

**2.** It was never established conclusively that appellant had been raped and/or sexually assaulted by the patient. Moreover, the Chester Police Department, following the investigation pursuant to a criminal complaint, elected not to bring criminal charges against this patient. However, this fact is in no way dispositive of this case and merely mentioned by way of background information.

**3.** Act of July 9, 1976, P.L. 817, No. 143, § 101, 50 P.S. § 7101 *et seq.*

thereafter sought allowance of appeal to this Court, which was granted.

In this appeal we are asked to address two issues of first impression: the first involves an interpretation of the language of the limited immunity provision of the Mental Health Procedures Act to determine whether it is applicable to Sacred Heart General Hospital; the second issue involves a determination as to whether Sacred Heart's conduct comes within the scope of this provision.[4]

In 1976, the General Assembly enacted the Mental Health Procedures Act[5] to provide procedures and treatment for the mentally ill in this Commonwealth. The policy of this Act is found in Section 102, which provides, in relevant part:

It is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill and it is the purpose of this act to establish procedures whereby this policy can be effected.... Treatment on a voluntary basis shall be preferred to involuntary treatment; and in every case, the least restrictions consistent with adequate treatment shall be employed.

50 P.S. § 7102. Consistent with this policy to insure adequate treatment in the least restrictive environment, is a limited immunity provision from civil and criminal liability for specific decisions regarding the treatment of the patient. This immunity is available to a mental health provider absent willful misconduct or gross negligence. The relevant statutory language regarding this immunity is as follows:

4. The question of hospital immunity under the MHPA was previously before the Superior Court in *Simmons v. St. Clair Memorial Hospital,* 332 Pa.Super. 444, 481 A.2d 870 (1984). That court declined to address this issue since it determined that under the specific facts of that case, the issue was potentially moot. Since the decision rendered by the Superior Court in the instant case, the Commonwealth Court in *Werner v. Commonwealth, Department of Public Welfare,* 109 Pa. Cmwlth. 134, 530 A.2d 1004 (1987) has decided this immunity issue as it relates to a state psychiatric hospital. This issue is now before us for our consideration.

5. *See* footnote 3, *supra.*

**Section 7114. Immunity from civil and criminal liability**

(a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

50 P.S. § 7114.

At the close of evidence, the trial court charged the jury that this limited immunity under MHPA applied to Sacred Heart and that the standard of liability in this case is one of willful misconduct or gross negligence. It is appellants' contention that the trial court erred in giving this charge and that the correct charge should have been one of ordinary negligence. Basically, appellants argue that this section applies to individual natural persons only and not organizational entities, such as Sacred Heart General Hospital.

With a statutory interpretation question such as the one before us, it is instructive to refer to the Statutory Construction Act of 1972.[6] This Act provides, *inter alia,* that the object of all interpretation and construction of legislation is to ascertain and effectuate the intention of the General Assembly,[7] and that the drafters of a statute do not intend a result that is absurd, impossible of execution or unreasonable.[8]

The Mental Health Procedures Act does not include a separate definitional section. Thus, as noted by Superior

6. Act of December 6, 1972, No. 290, § 3, 1 Pa.C.S. § 1501 *et seq.*
7. 1 Pa.C.S. § 1921(a).
8. 1 Pa.C.S. § 1922(1).

Court, the problem of specific provisions controlling general statutory provisions is not present in this case. *See* 1 Pa.C.S. § 1933. Consequently, we must interpret the MHPA so that its provisions and the provisions of the general statutory construction act are allowed to operate, absent a contrary, controlling specific provision. *See Appeal of Yerger,* 460 Pa. 537, 333 A.2d 902 (1975). We therefore may look to the general rules of statutory construction for guidance.

■ The word "person" as defined in the definitional section of the Statutory Construction Act "includes a corporation, partnership, and association, as well as a natural person" unless the context of the section it is used in clearly indicates otherwise. 1 Pa.C.S. § 1991. On the other hand, an "individual" is defined in this same section as a "natural person." *Id.* As mentioned above, the limited immunity conferred under this Act applies to specifically named individuals in addition to "any other authorized person who participates in a decision...." 50 P.S. § 7114. Under these circumstances and absent a specific definition to the contrary included in the MHPA, it is clear that the General Assembly intended this provision to encompass organizational entities, including corporations, partnerships and associations as well as natural persons. Had a contrary result been desired by the legislature, it is apparent it would have clearly contemplated using the word "individual" in lieu of the word "person."

Unquestionably, the clear intent of the General Assembly in enacting Section 114 of the MHPA was to provide limited civil and criminal immunity to those individuals and institutions charged with providing treatment to the mentally ill. Treatment in these facilities, in practical terms, must be administered by individuals. Therefore, these facilities do not act independent of their personnel. To allow an individual to claim immunity under this provision but in turn preclude its employer the same benefit of the immunity would indeed undermine the stated purpose of the limited immunity conferred under the Act. This result would only

encourage a plaintiff to circumvent the immunity clause by naming a hospital or facility and not its employees in a lawsuit: a result which would be both absurd and unreasonable. *See Philadelphia Housing Authority v. Commonwealth, Pennsylvania Labor Relations Board,* 508 Pa. 576, 499 A.2d 294 (1985); *Schaefer v. Hilton,* 473 Pa. 237, 373 A.2d 1350 (1977).

Given the above, it was proper for the trial court to instruct the jury that Sacred Heart fell within the ambit of Section 114 and therefore, the proper standard of care for the jury to consider was one of willful misconduct or gross negligence.

Having determined that this provision is applicable to Sacred Heart, we next turn to appellants' second question regarding the scope of this provision.

■ Appellants argue that should we hold that Sacred Heart falls within the class protected under this provision, this immunity, nevertheless, would not apply in this situation since it only pertains to certain acts enumerated in the section. Specifically, appellants assert that only decisions to admit, discharge or reduce restraints of a patient are to be afforded immunity from liability and thus fall within this provision. Appellants' argument is flawed for we believe this interpretation to be much too narrow and restrictive.

One of the purposes of the Mental Health Procedures Act is to provide limited protection from civil and criminal liability to mental health personnel and their employers in rendering treatment in this unscientific and inexact field. In addition to those decisions mentioned by appellants, Section 114 speaks of immunity of ones "who participates in a decision that a person be examined or treated under this act, ..." 50 P.S. § 7114. Treatment is defined in the MHPA as follows:

Adequate treatment means a course of treatment designed and administered to alleviate a person's pain and distress and to maximize the probability of his recovery from mental illness. It shall be provided to all persons in treatment who are subject to this act. It may include

inpatient treatment, partial hospitalization, or outpatient treatment. Adequate inpatient treatment shall include such accommodations, diet, heat, light, sanitary facilities, clothing, recreation, education and medical care as are necessary to maintain decent, safe and healthful living conditions.

Treatment shall include diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and to facilitate the recovery of a person from mental illness and shall also include care and other services that supplement treatment and aid or promote such recovery.

50 P.S. § 7104.

In addition to this general provision for treatment, Section 107 defines an "individualized treatment plan" as:

[A] plan of treatment formulated for a particular person in a program appropriate to his specific needs. To the extent possible, the plan shall be made with the cooperation, understanding and consent of the person in treatment, and shall impose the least restrictive alternative consistent with affording the person adequate treatment for his condition.

50 P.S. § 7107.

Appellants maintain that their theories of liability are predicated on the hospital's complete lack of treatment of Mrs. Farago in addition to its failure to provide a safe and secure environment. However, the decision to admit Mrs. Farago under routine orders, including hourly checks, was a plan of treatment specially formulated for her particular needs at the time of her admission. This decision by the staff to allow her to remain in the open ward, on one hour watch, rather than on closer supervision, was in accordance with the mandates of the statute to impose the least restrictive alternatives consistent with affording the patient adequate treatment. This was a treatment decision and in the absence of willful misconduct or gross negligence it was protected under the immunity provision. 50 P.S. § 7114.

For the foregoing reasons, we hold that for purposes of applying the limited immunity provision of the MHPA, in

addition to those specifically named in the section, this statutory immunity is afforded to those organizational entities that provide treatment of the mentally ill under the guidelines of the MHPA. Accordingly, the order of the Superior Court is affirmed.

STOUT, Former Justice, did not participate in the decision of this case.

NIX, C.J., joins the majority and files a concurring opinion.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

NIX, Chief Justice, concurring.

I concede that Mr. Justice Larsen offers an interesting argument, based upon the statutory construction, in an effort to support his view that the facility is not immunized under Section 114 of the Mental Health Procedures Act, Act of July 9, 1976, P.L. 817, No. 143, § 101 *et seq.*, 50 P.S. § 7101 *et seq.* Notwithstanding, I do not find it persuasive.

As recognized by the majority, it would be difficult to comprehend the logic of a provision which would attempt to protect from civil liability those persons managing the business entity and yet expose the entity itself to liability under a theory of *respondeat superior.*

I join the majority opinion.

LARSEN, Justice, dissenting.

I dissent. The Mental Health Procedures Act (the Act), Act of July 9, 1976, P.L. 817, No. 143, 50 Pa.Stat.Ann. § 7101–7503 (Purdon's Supp.1988), does not in my view immunize Sacred Heart General Hospital, the appellee, from civil liability in this case.

Section 114 of the Act, 50 P.S. § 7114, provides that in the absence of gross negligence or willful misconduct, the following are immune from civil or criminal liability for decisions relating to treatment, admission, discharge, etc. of

persons covered by or subject to the Act: "a county administrator, a director of a facility, a physician, a peace officer *or any other authorized person who participates in a decision*" regarding said treatment, admission, discharge, etc. Because the Act does not specifically define "person," the majority looks to the Statutory Construction Act of 1972 for guidance, specifically definitional section 1991, 1 Pa.C. S.A. § 1991, which provides: ·

> The following words and phrases, when used *in any statute ...*, *unless the context clearly indicates otherwise*, shall have the meanings ascribed to them in this section:
>
> *       *       *       *       *       *
>
> "Person." Includes a corporation, partnership, and association, as well as a natural person.

The Mental Health Procedures Act (the Act) *clearly indicates otherwise* —"person" is used in section 114 and throughout the Act to refer to natural persons. Section 114 specifically names four natural persons (county administrator, director of a facility, physician, and peace officer) who receive some immunity under the Act when they participate in decisions regarding admission, treatment, discharge, etc. and names a fifth non-specific "other authorized *person who participates* in a decision...*." to receive said immunity. *Clearly,* decisions under the Act and under this section are made by natural persons, not by corporations, associations, etc. "Persons" is used later *in this same section* to refer to those natural persons needing/receiving treatment—surely the legislature did not mean to include corporations, etc. as "persons" who would receive or be refused treatment under the Act, nor did they intend to have two different operative definitions of "person" within the same section.

To the contrary, throughout the Act "person" is used to describe natural persons, both those receiving/needing treatment and those administering it, while *"facility"* is used to define the corporate, business entities providing the services. Section 114's "any other authorized person who

participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization ...," etc., would presumably include those *natural persons* identified in section 106, "Persons responsible for formulation and review of treatment plan,"[1] and those *natural persons* who are authorized in section 201 to subject a child under 14 years of age to examination and treatment.[2] In contrast, "facility" is clearly and specifically defined in section 103 of the Act, 50 P.S. § 7103, as follows:

**Scope of act**

This act establishes rights and procedures for all involuntary treatment of mentally ill *persons*, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill *persons*. "Inpatient treatment" shall include all treatment that requires full or part-time residence in a *facility*. For the purpose of this act, a *"facility means any mental health establishment, hospital, clinic, institution, center, day care center, base service unit, community mental health center, or part thereof,* that provides for the diagnosis, treatment, care or rehabilitation of mentally ill *persons*, whether as outpatients or inpatients. (Emphasis added.)

The legislature made a *clear* distinction, then, between those *natural persons who participate* in decisions under the Act and administer its provisions, and the mental health care *facilities* providing services under the Act. Just as clearly, had the legislature intended to immunize the mental health care *facility* from immunity with section 114, 50 P.S. § 7114, it would surely have immunized "any other authorized person *or facility* ...." The legislature did not do this, however, and the context not only of this section but of

1. Section 106 of the Act, 50 P.S. § 7106, provides for "treatment teams" to formulate and review individualized treatment plans for persons in treatment under the act, which teams are to be under the direction of either a physician or a licensed clinical psychologist.

2. Section 201 of the Act, 50 P.S. § 7201, provides that "A parent, guardian or person standing in loco parentis to a child less than 14 years of age may subject such child to examination and treatment under this act...."

the entire Act indicates that this omission was *intentional* and that "person," for purposes of immunity under section 114, means *natural persons* as it does everywhere else in the Act.

Furthermore, I disagree with the majority's analysis of the scope of the immunity provided by section 114. I do not believe that appellants' complaint is limited to the individualized treatment prescribed for Jessie L. Farago "in this unscientific and inexact field." At 417–419. That is, assuming for argument's sake only that appellee hospital is immune from liability under the Act, its "decision to admit Mrs. Farago under routine orders, including hourly checks ... specially formulated for her particular needs at the time of her admission," at 304, might well be an immunized decision. However, appellants do not complain solely of that decision or its consequences; rather their complaint alleged negligence on the part of the hospital for failing to adequately supervise Jessie Farago and protect her from other potentially and actually dangerous persons in the facility such as her alleged rapist.

Appellants do not seek recompense for damages caused by her "routine" admission with hourly checks, but rather from a sexual assault upon her by an unsupervised patient. It is obvious that "sexual assault by an unsupervised patient" was not part of the individualized treatment plan prescribed for Jessie Farago and that appellant's complaint does not seek remedy for damages arising from her treatment plan. If Jessie Farago had wandered onto a driveway on hospital grounds and was struck by a car commandeered by an unsupervised patient, her complaint for damages would not be based upon the method of treatment or the treatment plan devised for her or for the other patient, but upon the hospital's ordinary negligence in failing to take adequate security measures to prevent such occurrence. No legitimate treatment plan under the Act would provide for or contemplate negligent supervision of patients.

I would hold that Sacred Heart General Hospital is not immune from liability under the Act and that, therefore, the

jury should have been instructed on a standard of ordinary care, not gross negligence or wilful misconduct. I would reverse Superior Court on that basis and would not reach the issue of the scope of the immunity provided by the Act, although I express my disagreement with the majority's analysis thereof and its holding that Sacred Heart's conduct in this case was within the scope of the immunity provided.

PAPADAKOS, J., joins this dissenting opinion.