

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-17-2004

# Benn v. Unvrsl Health Sys

Precedential or Non-Precedential: Precedential

Docket No. 01-3450

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Benn v. Unvrsl Health Sys" (2004). 2004 Decisions. Paper 548.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/548

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>PRECEDENTIAL</u>

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-3450
_____

DONALD BENN,

Appellant

v.

UNIVERSAL HEALTH SYSTEM,
INC.; HORSHAM CLINIC;
RAMESH ELURI, DR.; EILEEN
WILCOX; MONTGOMERY
COUNTY MH-MR EMERGENCY
SERVICE, d/b/a MONTGOMERY
COUNTY EMERGENCY SERVICE,
INC.; VENU MUKERJEE, DR.,
Individually, severally, jointly and/or in
the alternative;
STEPHEN ZERBY, M.D.;
MOHAMMAD QUASIM, DR., C/O
MONTGOMERY
COUNTY EMERGENCY SERVICE,
INC. 50 BEECH DRIVE
NORRISTOWN, PA
19401 INDIVIDUALLY, SEVERALLY,
JOINTLY AND/OR IN THE
ALTERNATIVE
_____

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

District Court Judge: Honorable Mary A.
McLaughlin
(D.C. No. 99-cv-6526)
_____

Submitted Under Third Circuit LAR
34.1(a)
December 4, 2003

Before: SLOVITER, ALITO, <u>Circuit
Judges</u>, and OBERDORFER,[*] <u>District
Court Judge</u>

(Opinion Filed: June 17, 2004)

ROSS BEGELMAN
Begelman & Orlow
411 Route 70 East
Suite 245
Cherry Hill, New Jersey 08034
*Counsel for Appellant*

KEVIN J. O'BRIEN
Marks, O'Neill, O'Brien, & Courtney
1880 JFK Boulevard
Suite 1200
Philadelphia, PA. 19103

KENNETH D. POWELL, JR.
Rawle & Henderson
334 West Front Street
2nd Floor
Media, PA. 19063

CHARLES W. CRAVEN
MARION H. GRIFFIN

_____

[*] The Honorable Louis F. Oberdorfer,
United States District Judge for the
District of Columbia, sitting by
designation.

Marshall, Dennehey, Warner, Coleman &
Goggin
1845 Walnut Street
16th Floor
Philadelphia, PA 19103

*Counsels for Appellees*

_____

OPINION OF THE COURT

_____

Alito, <u>Circuit Judge</u>:

This case concerns Donald Benn's short-term involuntary commitment to a psychiatric facility for an emergency examination. After his release, Benn brought federal and state claims against those involved in his commitment. The District Court granted summary judgment in favor of all defendants. We affirm.

**I.**

Prior to the events at issue here, Donald Benn was under the care of therapist Dr. Jack Hartke and psychiatrist Dr. Lynn Bornfriend, both of whom had treated him for depression and post-traumatic stress disorder. The treatment included anti-depressant medication.

On August 15, 1998, Benn telephoned the Horsham Clinic ("Horsham") three times. Horsham, a mental healthcare facility in Montgomery County, Pennsylvania, is wholly owned by Universal Health System, Inc. ("UHS").

Each time Benn called Horsham, he spoke to Eileen Wilcox, an experienced crisis-line counselor. Benn told Wilcox that he was looking for treatment for post-traumatic stress disorder and was interested in Horsham. Benn admits that during one conversation he told Wilcox that he was driving over the Tacony-Palmyra Bridge. Wilcox claims that Benn told her he had stopped his car and had considered jumping off the bridge. Benn denies this. Wilcox told Benn that Horsham did not make regular outpatient appointments but that they would assess his need for care if he came in.

Benn arrived at Horsham late that evening and was quickly interviewed by psychiatrist Dr. Ramesh Eluri. The interview lasted 40 minutes, and Dr. Eluri claims that, during the interview, Benn admitted to being depressed and suicidal. Benn asserts that he never told Dr. Eluri that he was suicidal and that Dr. Eluri misunderstood him because of Dr. Eluri's poor English. After the interview, Dr. Eluri told Wilcox that he was concerned for Benn's safety and that a petition for involuntary commitment might be necessary because Benn refused to seek treatment. Benn, however, did agree to sign a "Contract for Safety," which stated:

> I, Donald Benn on August 15, 1998 agreed to keep myself safe and that if I feel any increase of suicidal thoughts or feeling I will contact Horsham Clinic [or] the police." Below the

2

contract, Benn wrote: "While there is no doubt what-so-ever that my mental/emotional health has been GREATLY compromised I feel as certain as certain can be that a few more days won't hurt (too much)."

Wilcox asked Benn to remain at the clinic while Dr. Eluri looked over the contract, but Benn refused and left.

Upon seeing the contract, Dr. Eluri's concern about Benn's safety grew, and he filed an application under a provision of Pennsylvania's Mental Health Procedures Act (MHPA), 50 Pa. Stat. Ann. § 7302(a), requesting that Benn be examined to determine his need for treatment. See App. 240-42. The application stated:

> [Benn] said he had seriously thought about jumping from Coney Bridge [sic], while he was driving. In fact, he stopped the car. He admits feeling suicidal now and feels unsafe and unstable. He also believes that his mental health is compromised and needs hospitalization. He also says he had suicidal thoughts consistently for the past few weeks. He is vague about his attempts... In my assessment, Pt. is very suicidal, feels unsafe and dangerous to himself. He needs inpatient treatment.

App. 242.

The petition was reviewed by the county administrator, who authorized the police to take Benn into custody. The police went to Benn's home, and he was transported by ambulance to Montgomery County Emergency Service Inc. ("MCES"), a private, not-for-profit psychiatric hospital in Norristown, Pennsylvania, that, by contract, handles all involuntary and emergency psychiatric confinements in the county.

Upon arrival at MCES, Benn was placed in an isolated waiting room. He was then seen by Dr. Stephen Zerby, an MCES psychiatrist, who conducted an hour-long interview and decided, based on the interview and Dr. Eluri's petition, that Benn should be admitted for an emergency examination for the period permitted by the MHPA, 50 Pa. Stat. Ann. § 7302(d), i.e., not more than 120 hours. App. 244. The next day, August 16, Benn was interviewed by Dr. Mohammad Quasim, another MCES psychiatrist, who continued the treatment started by Dr. Zerby. The following day, August 17, Benn was seen by Dr. Venu Mukerjee, yet another MCES psychiatrist, who found him to have "limited insight and obvious[] difficulties with impulse control, where he might have verbalized suicidal intent while at Horsham . . . . His insight is limited and his judgment is definitely impaired." App.

3

21. On August 18, Dr. Mukerjee noted that "[Benn] is now contracting for safety and has never been suicidal since his admission here." He was then released. App. 22.

During his time at MCES, Benn was in contact with his common-law wife, his treating therapist, a lawyer, and a friend. Benn claims that his detention room had no toilet and that he was forced to urinate on the walls.

In December 1999, Benn filed this action in the United States District Court for the Eastern District of Pennsylvania against Wilcox, Dr. Eluri, Horsham, UHS, MCES, Dr. Mukerjee, Dr. Zerby, and Dr. Quasim. Benn asserted claims under 42 U.S.C. § 1983 for alleged violations of his procedural and substantive due process rights, as well as numerous tort claims under Pennsylvania law, to wit, negligence/malpractice, intentional infliction of emotional distress, assault and battery, negligence, and false imprisonment. In addition, Benn sought punitive damages against all defendants.

The parties filed cross-motions for summary judgment. In July 2001, the District Court granted summary judgment in favor of all defendants. The Court held that Dr. Eluri, Wilcox, Horsham, and UHS were not state actors and thus could not be sued under §1983. In addition, assuming for the sake of argument that MCES, Dr. Mukerjee, Dr. Zerby, and Dr. Quasim were state actors, the Court held that they did not violate Benn's right to substantive or procedural due process. The Court also granted summary judgment on the state tort claims for all parties except Wilcox, because it found that these parties were immune from such claims under Section 114 of the MHPA, 50 Pa. Stat. Ann. §7114. As for Wilcox, the Court found that there was no evidence against her to support the state tort claims. Benn appealed.

## II.

We turn first to Benn's § 1983 claim. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To establish a claim under §1983, Benn must show that the defendants 1) were

state actors[1] who 2) violated his rights under the Constitution or federal law. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978).

**A.**

Benn contends that Horsham, UHS, Dr. Eluri, and Wilcox[2] (the "Horsham defendants") were state actors because they were acting pursuant to the MHPA. Under the MHPA, a physician or other "responsible party" may file an application that may lead to the issuance of a warrant authorizing a person who is "severely mentally disabled and in need of immediate treatment"[3] to be taken to a

---

[1] "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982); see also Dluhos v. Strasberg, 321 F.3d 365, 374 (3d Cir. 2003).

[2] For the purpose of summary judgment, MCES, Dr. Mukerjee, Dr. Quasim, and Dr. Zerby conceded that they were "state actors," and therefore we do not decide that question.

[3] A person is "severely mentally disabled" "when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself."

designated facility for an emergency examination. 50 Pa. Stat. Ann. § 7302(a)(1).[4] In addition, a physician or

---

50 Pa. Stat. Ann § 7301(a).

[4] 50 P.S. § 7302(a) provides as follows:

(a) Application for Examination.--Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

(1) Warrant for Emergency Examination.--Upon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace officer, to take such

5

other person who has observed a person engaging in conduct that provides reasonable grounds to believe that the person is "severely mentally disabled and in need of treatment" may take the person to an approved facility for such an examination. 50 Pa. Stat. Ann. § 7302(b). At the facility, the individual who brought the person thought to need treatment must make "a written statement setting forth the grounds for believing the person to be in need of examination." 50 Pa. Stat. Ann. § 7302(a)(2). A person taken to a facility must be examined within two hours, and if it is determined that the person is "severely mentally disabled and in need of immediate treatment," the treatment must begin immediately. 50 Pa. Stat. Ann. § 7302(b). If it is determined at any time that the person is not in need of treatment, the person must be discharged, and in any event the person must be released within 120 hours unless a certification for extended involuntary emergency treatment is filed under 50 Pa. Stat. Ann. § 7303. In this case, the District Court held that, because the Horsham defendants were merely involved in the application for Benn's commitment, they were not state actors.

In Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001), the Supreme Court noted that the criteria for determining whether state action is present "lack rigid simplicity," but the Court identified factors that bear on the question. The Court wrote:

> We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," [Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)], when the State provides "significant encouragement, either overt or covert," ibid., or when a private actor operates as a "willful participant in joint activity with the State or its agents,"

---

person to the facility specified in the warrant.

(2) Emergency Examination Without a Warrant.--Upon personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, and (sic) physician or peace officer, or anyone authorized by the county administrator may take such person to an approved facility for an emergency examination. Upon arrival, he shall make a written statement setting forth the grounds for believing the person to be in need of such examination.

.

[Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982)] (Internal quotation marks omitted). We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," Pennsylvania v. Board of Directors of City Trusts of Philadelphia, 353 U.S. 230. 231 (1957) *(per curiam),* when it has been delegated a public function by the State, cf., e.g., [West v. Atkins, 487 U.S. 42, 56 (1988)]; Edmonson v. Leesville Concrete Co., 500 U.S. 614, 627-628 (1991), when it is "entwined with governmental policies," or when government is "entwined in [its] management or control," Evans v. Newton, 382 U.S. 296, 299, 301 (1966).

531 U.S. at 295.

In the present case, none of these factors points toward the presence of state action. First, the MHPA, on which Benn predicates his state action argument, did not coerce the Horsham defendants to file the application that led to Benn's commitment. Nor did the MHPA provide "significant encouragement, either overt or covert." Blum, 457 U.S. at 1004. Although the MHPA permits a physician or other "responsible party" to file an application for an emergency examination, we see nothing in the MPHA that compels or even significantly encourages the filing of an application. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir. 1994) (no compulsion where state law merely permits physicians to petition for involuntary commitment but does not mandate that they do so); Harvey v. Harvey, 949 F.2d 1127, 1131 (11th Cir. 1992) (no compulsion or encouragement where state statutes not enacted to encourage commitment); Spencer v. Lee, 864 F.2d 1376,1379 (7th Cir.1989) (same); Janicsko v. Pellman, 774 F.Supp. 331, 338-39 (M.D.Pa.1991) ("this court cannot hold that the standards set by the MHPA rise to the level of coercion"), aff'd, 970 F.2d 899 (3d Cir. 1992) (table).

Second, the Horsham defendants did not operate as "willful participant[s] in joint activity with the State or its agents" under Lugar, 457 U.S. at 941. In Lugar, creditors moved for a prejudgment writ of attachment, and the writ was issued by a court clerk and executed by a sheriff. Id. at 924. The debtor whose property was attached brought an action asserting two § 1983 claims against the creditors. Count one claimed that the prejudgment attachment process permitted by state law was "procedurally defective under the Fourteenth Amendment." Id. at 941. Count two alleged that the creditors had invoked the attachment process in a way that was "'malicious, wanton, willful, opressive *[sic]*" and unlawful under state law. Id. at 940 (brackets in Supreme Court opinion). The Supreme Court held that the

first count stated a § 1983 claim because "the procedural scheme" was "the product of state action." Id. By contrast, the Court concluded that the second count did not satisfy the state action requirement because "private misuse of a state statute does not describe conduct that can be attributed to the State." Id. The Court stated: "[t]hat [the creditor] invoked the statute without the grounds to do so could in no way be attributed to a state rule or decision." Id. at 940.

In this case, Benn's constitutional claims against the Horsham defendants parallel the claim found to be defective in Lugar. As Benn's Memorandum of Law in Support of his Motion for Summary Judgment makes clear, Benn's theory was that these defendants violated his constitutional rights because they allegedly did not comply with the MHPA. See App. 428-429. The portion of Benn's Memorandum addressing his constitutional claims begins by stating:

> Defendants had [a] duty and obligation to follow the rules and standards of the Pennsylvania Mental Health Procedures Act. Such act governed the circumstances and procedures surrounding the extreme action of involuntarily committing an individual.

Id. at 428. The Memorandum then adds:

> Defendants clearly failed to

act according to the Act, and the high duty placed upon them. Such intentional, reckless, and gross disregard of the rules and standards they were bound by, the Defendants intentionally committed a horrible act upon Plaintiff.

Id. at 429.

The crux of Benn's complaint about the conduct of the Horsham defendants appears to be that they conducted a "seriously defective evaluative process," Appellant's Br. at 10, and that he did not meet the standard for emergency commitment under the MHPA. See App. 429 (Memorandum in Support of Summary Judgment); id. at 263 (expert report). Benn's constitutional claim against Horsham defendants is thus precisely the type of claim that Lugar found to be inadequate to establish state action.

Third, this is clearly not a case in which nominally private persons were controlled by an agency of the Commonwealth. Benn makes no such allegations.

Fourth, the conduct in question here – applying for Benn's emergency commitment – is not a "public function" that the MHPA delegated to private persons. In considering the "public function" issue, we must ask whether the challenged action relates to a function that

has been "traditionally the exclusive prerogative of the State." Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974). Here, we have no basis for concluding that petitioning for involuntary confinement is or ever was the exclusive prerogative of the state, either in Pennsylvania or in the country in general. See Rockwell v. Cape Cod Hosp., 26 F.3d at 259 ("The history of involuntary treatment of the mentally ill in Massachusetts demonstrates that involuntary treatment has by no means been the exclusive prerogative of the State."); Spencer v. Lee, 864 F.2d 1376, 1380-81(7th Cir. 1989)(holding that civil commitment in Illinois was not a traditional and exclusive public function); Bodor v. Horsham Clinic, Inc., 1995 WL 424906 at *8 (E.D.Pa. July 19, 1995) (Pennsylvania).

Fifth, this case does not involve "entwinement" within the meaning of Brentwood. There, the Court held that an interscholastic athletic association was entwined with the state where the great majority of the association's member schools were public, representatives of the schools acting in their official capacities selected members of the association's governing bodies, state officials also sat on those bodies in an ex officio capacity, the association was largely financed by gate receipts from member-school tournaments, and association employees participated in the state retirement system. 531 U.S. at 298-300. In this case, Benn does not allege that the Commonwealth was "entwined" in any comparable sense with the Horsham defendants. Thus, none of the factors identified in Brentwood supports a finding of state action in this case.

Nor does this case satisfy the "symbiotic relationship" test that derives from Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961). After Brentwood, our Court, sitting en banc, held that the "symbiotic relationship" test continues to provide an additional, albeit "narrow," basis for finding that private action may fairly be attributed to the state. Crissman v. Dover Downs Entertainment, Inc., 289 F.3d 231, 242 (3d Cir. 2002). This theory, however, has no application here. A "symbiotic relationship" demands "a close association of mutual benefit" between the state and the private entity or person. Crissman, 289 F.3d at 240. In Burton, such a relationship existed between a city that owned a parking structure and a restaurant to which it leased space. In this case, there is no indication that the Horsham defendants made any profit from the petition to commit Benn, and there certainly is no evidence that the government received any tangible benefit from Horsham, save a possible increase in the general welfare. "That a private entity performs a function which serves the public does not make its acts state action." Rendell-Baker v. Kohn, 457 U.S. 830. Thus, neither the factors cited in Brentwood nor the symbiotic relationship theory shows the presence of state action in this case.

The decisions of other courts of

appeals and those of district courts in this circuit also support the conclusion that persons who petition for the involuntary commitment of others are not state actors. See Rockwell v. Cape Cod Hosp., 26 F.3d at 257-58; Harvey v. Harvey, 949 F.2d 1127, 1131 (11th Cir.1992); Spencer, 864 F.2d at 1380-81; Doby v. Decrescenzo, 1996 WL 510095 (E.D.Pa. Sept. 9, 1996), aff'd, 118 F.3d 1575 (3rd Cir. 1997) (table); Bodor v. Horsham Clinic, Inc., supra (thoroughly analyzing the "state actor" question); Savacool v. Delaware County Department of Mental Health, 1993 WL 21209, *6 (E.D.Pa. Jan.25, 1993); Janicsko v. Pellman, 774 F.Supp. 331, 339 (M.D.Pa.1991), aff'd, 970 F.2d 899 (3d Cir.1992).

Our analysis leads to the same result. We thus hold that the Horsham defendants were not state actors.

**B.**

Benn claims that MCES, Dr. Mukerjee, Dr. Zerby, and Dr. Quasim, all of whom conceded that they were state actors for purposes of the motion for summary judgment, violated both his procedural and substantive due process rights. We disagree.

**1.**

Benn argues that MCES and its doctors violated procedural due process by failing to comply with the MHPA and by failing to grant him a hearing before he was involuntarily confined. This argument has no merit.

First, even if these defendants violated the MHPA, this would not establish a §1983 claim. "The plain language of section 1983, interpreted and underscored by the Supreme Court in Maine v. Thiboutot, 448 U.S. 1 (1980), solely supports causes of action based upon violations, under the color of state law, of federal statutory law or constitutional rights. Section 1983 does not provide a cause of action for violations of state statutes." Brown v. Grabowski, 922 F.2d 1097, 1113 (3d Cir. 1990); see also Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978).

Second, in an emergency situation, a short-term commitment without a hearing does not violate procedural due process. In a similar case dealing with the MHPA, we observed that "[i]t may be reasonable . . . for a state to omit a provision for notice and a hearing in a statute created to deal with emergencies, particularly where the deprivation at issue, in this case detention for a maximum of several hours to permit an examination, continues for only a short period of time." Doby v. DeCrescenzo, 171 F.3d 858, 870 (3d. Cir. 1999); see also Project Release v. Prevost, 722 F.2d 960, 974 (2d Cir. 1983); Covell v. Smith, 1996 WL 750033 (E.D.Pa. Dec. 30 1996); Luna v. Zandt, 554 F.Supp. 68, 76 (S.D.Tex. 1982).

Benn's case clearly presented an emergency situation. Both his calls to the Horsham clinic and his note at the bottom

10

of his Contract for Safety suggested to the doctors that Benn was highly unstable. Furthermore, he was committed for a "short period of time" and was released upon Dr. Mukerjee's evaluation that he was no longer suicidal. While committed, Benn was constantly evaluated by the MCES physicians. Under these circumstances, we hold that the defendants did not violate Benn's rights by not granting him a hearing before he was committed.

Third, we see no evidentiary basis in the record for Benn's claim that MCES maintains a policy that denied him his due process rights. On the contrary, MCES guidelines track the MHPA, which does not deny due process. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). In sum, we hold that Benn's procedural due process rights were not violated.

**2.**

Benn appears to argue that his substantive due process rights were violated in three ways. First, he claims that Drs. Zerby and Mukerjee incompetently failed to recognize that he was not suicidal. Second, he asserts that he was kept in a room without a toilet. Third, he claims that he was forcibly given antipsychotic medication.

"[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that

it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847, fn. 8 (1998). Whether an incident "shocks the conscience" is a matter of law for the courts to decide, see Rochin v. California, 342 U.S. 165, 172 (1952), and we have previously held that involuntary commitment under the MHPA does not in itself violate substantive due process. See Doby v. DeCrescenzo, 171 F.3d at 871 n. 4 ("[T]he MHPA authorizes seizures that are 'reasonable' under the Fourth Amendment [and so] the MHPA meets the rationality test imposed by substantive due process analysis.")

In this case, none of the specific conduct that Benn alleges shocks the conscience. First, Benn's complaints about Drs. Zerby or Mukerjee are insufficient. Benn claims that Drs. Zerby and Mukerjee exhibited "total incompetenc[e] . . . . [by failing] to understand that plaintiff was showing no suicidal ideation which merited his involuntary confinement." Br. of Appellants at 13. But whether or not Drs. Zerby and Mukerjee properly analyzed Benn's condition, their conduct did not violate substantive due process. In view of the events that led to Benn's commitment and the steps taken after his arrival at MCES, the doctors' conduct was not conscience-shocking.

Second, Benn's allegation that he was temporarily kept in a room without a toilet is insufficient without further aggravating evidence to meet the high

standard needed to state a substantive due process violation. As the District Court pointed out, Benn failed to produce any evidence that the defendants were aware that he needed to use a bathroom or that "MCES had a custom or policy of refusing to allow patients to use the bathroom." App. 31.

Third, the administration of antipsychotic drugs is not shocking to the conscience under the circumstances present here. We have held that authorities may administer antipsychotic drugs over a patient's objection "where the decision is a product of the authorities' professional judgment." White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). See also Rennie v. Klein, 720 F.2d 266, 269 (3d Cir. 1983). In this case, however, as the District Court noted, Benn has not alleged that he objected to the administration of the medication. App. 32. Under these circumstances, Dr. Zerby's conduct did not shock the conscience.

### III.

Benn next contends that the District Court erred in granting summary judgment in favor of the defendants on his state tort claims. We disagree.

### A.

The MHPA gives broad immunity to physicians and others who participate in the involuntary commitment process:

In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

50 Pa. Stat. Ann. § 7114(a). As the District Court properly found, Wilcox, a crisis-line counselor who had no effect on the decision to commit Benn, is not covered under the strict language of the immunity provision. It is clear, however, that the remaining defendants qualify for immunity if they did not engage in "willful misconduct or gross negligence." See Doby v. DeCrescenzo, 171 F.3d 858, 875 (3d Cir. 1999).

Under Pennsylvania law, "gross

12

negligence" is "more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity or indifference." Rather, gross negligence requires conduct that is "flagrant, grossly deviating from the ordinary standard of care." Alrbight v. Abington Memorial Hospital, 696 A.2d 1159, 1164 (Pa. 1997). "Willful misconduct" occurs when "the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." Krivijanski v. Union R. Co., 515 A.2d 933, 937 (Pa. Super. Ct. 1986).

Here, none of the defendants committed either gross negligence or willful misconduct. The only evidence that Benn puts forward to show such behavior consists of the two expert reports of his treating psychiatrist, Dr. Bornfriend. In her second report, Dr. Bornfriend alleges:

> There appears to be evidence, however, that some of the mistreatment Mr. Benn endured appeared secondary to even more malignant causes [than simple negligence], raising issues of deliberate indifference, arrogance, condescension, and punitive hostility from these doctors. I find shocking the level of disregard for standard practices involved in psychiatric treatment, especially as they relate to involuntary commitment and find that these Depositions show clear and convincing evidence that Mr. Benn was inappropriately involuntarily committed and held in the psychiatric hospital, subjected to abusive mistreatment, and a victim of medical malpractice and negligence.

We agree with the District Court that the assertions in this report do not comport with the facts and that, considering the record as a whole, no reasonable jury could find that the doctors acted with gross negligence or willful misconduct. The doctors all participated in meetings, took careful notes, and prescribed a careful routine and course of treatment for Benn. He was released as soon as they found him to be safe. Their behavior did not meet the legal definition of either gross negligence or willful misconduct. Since none of the doctors committed any such conduct, we will also affirm the dismissal of the related claims against MCES. See Farago v. Sacred Heart Hospital, 562 A.2d 300, 303 (Pa. 1989).

**B.**

Finally, we hold that the District Court properly dismissed the state tort claims against Eileen Wilcox. There is no

13

evidence whatsoever that would even begin to support any of those claims against Wilcox.

## IV.

For the reasons explained above, we affirm the order of the District Court.