Doris Keith TYREE, Administratrix of the Estate of Do'ron Keith, Deceased, Appellant

v.

The CITY OF PITTSBURGH, and the Boro of Dormont and the Municipality of Mt. Lebanon.

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1995.
Decided Dec. 29, 1995.

Michael Balzarini, for appellant.

Susan E. Malie, Assistant City Solicitor, for appellee City of Pittsburgh.

Gloria N. Fuehrer for appellee The Municipality of Mt. Lebanon.

Susan B. Merrick for appellee The Borough of Dormont.

Before DOYLE and NEWMAN, JJ., NARICK, Senior Judge.

DOYLE, Judge.

Doris Keith Tyree, Administratrix of the Estate of Do'Ron Keith (Decedent), appeals two orders of the Court of Common Pleas of Allegheny County, which granted the motions for summary judgment of the City of Pittsburgh (City), the Municipality of Mt. Lebanon, and the Borough of Dormont (collectively referred to as the Municipalities).

On August 18, 1990, a City police officer observed Decedent ignore a red light and drive his vehicle at a high rate of speed. The police officer activated the emergency lights on her police cruiser and initiated a high speed pursuit of Decedent. Decedent refused to pull over and, driving at speeds of approximately 80 miles per hour, drove his vehicle through the City into Dormont, and then into Mt. Lebanon. As Decedent exited the City, the City's police chase terminated and the chase was taken up by the Dormont and Mt. Lebanon police departments. The chase finally ended in Mt. Lebanon when Decedent's vehicle failed to negotiate an "S" curve and rammed a utility pole. The accident nearly ripped Decedent's vehicle in half and inflicted fatal injuries on Decedent.

Thereafter, Tyree filed a wrongful death action and a survival action against the Municipalities, alleging that they negligently, carelessly, and recklessly caused Decedent's death. Specifically, Tyree claimed that the Municipalities' police, without cause, pursued Decedent in an unreasonable manner and in violation of police rules regarding such chases, and failed to terminate the pursuit when it created an unreasonable risk of death or serious injury. She also averred that the police were not properly trained in procedures for high speed pursuits. The Municipalities filed answers to Tyree's complaint and, in new matter, they raised the affirmative defense of governmental immunity.

Affidavits and depositions were entered into the record and the Municipalities filed motions for summary judgment. The Municipalities asserted, *inter alia*, that they were immune from suit and that they were not liable for the criminal and negligent conduct of Decedent. On April 14, 1994, the trial court granted the motions for summary judgment of the City and Mt. Lebanon; on April 20, 1994, the trial court entered a second order granting Dormont's motion for summary judgment. The trial court reasoned that the Municipalities were shielded by governmental immunity and that the facts in this case did not fall into any exception to that immunity provided in Section 8542 of the Judicial Code (Code), 42 Pa.C.S. § 8542. The trial court also stated that Decedent violated numerous traffic laws, ignored the request of the police to stop, and had ample opportunity to end the chase. Tyree filed separate appeals from the trial court's two orders, and those appeals were consolidated by this Court.

▐ Tyree contends that the trial court erred in holding that the Municipalities were immune from suit, because this case is within the vehicle exception to governmental immunity, Section 8542(b)(1) of the Code, 42 Pa. C.S. § 8542(b)(1).[1] She also contends that, because she did not participate in the chase and is thus an innocent plaintiff, a wrongful death action may be maintained against the Municipalities.[2]

1. Section 8542(b)(1), the vehicle exception, is as follows:

> **(b) Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
> (1) *Vehicle Liability.*—The operation of any motor vehicle in the possession or control of the local agency. As used in this paragraph, 'motor vehicle' means any vehicle which is self propelled and any attachment thereto, includ-

ing vehicle operated by rail, through water or in the air.

2. Our scope of review of an order granting summary judgment is whether the trial court committed an error of law or a manifest abuse of discretion. *Krug v. City of Philadelphia*, 152 Pa.Cmwlth. 475, 620 A.2d 46 (1993). Summary judgment is properly granted where there is no outstanding issue of a material fact and the moving party is entitled to judgment as a matter of law. *Id.*

A plaintiff seeking to impose liability on a local agency has the burden of showing that a common law or statutory cause of action for negligence exists and that the negligent act falls into one of the exceptions to governmental immunity in Section 8542(b) of the Code. *Santori v. Snyder,* 165 Pa. Cmwlth. 505, 645 A.2d 443 (1994). The exceptions to government immunity are required to be narrowly construed, *Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988), and the Legislature has not waived immunity for criminal acts of third parties. *Southeastern Pennsylvania Transportation Authority v. Hussey,* 138 Pa.Cmwlth. 436, 588 A.2d 110 (1991), *petition for allowance of appeal denied,* 530 Pa. 649, 607 A.2d 258 (1992). And, harm caused by others may not be imputed to local agencies or their employees. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987).

Tyree contends that the vehicle exception applies in this case, because the police pursuing Decedent were operating vehicles owned by the Municipalities. However, notwithstanding that contention, we conclude that Decedent's criminal and negligent acts in this matter preclude the imposition of liability on the Municipalities. *Dickens v. Horner,* 531 Pa. 127, 611 A.2d 693 (1992); *Hawks by Hawks v. Livermore,* 157 Pa.Cmwlth. 243, 629 A.2d 270 (1993).

In *Dickens,* a fleeing suspect, Horner, was being pursued by an Upper Chichester Township police officer and, in the course of that chase, Horner collided with a vehicle operated by an innocent third party, Dickens. Thereafter, Dickens filed suit against the township and the police officer, alleging that the decision to pursue Horner was the proximate cause of the accident. After the trial court denied the township's preliminary objections asserting governmental immunity, the case was appealed, as an interlocutory appeal by permission, to this Court. This Court affirmed the trial court, holding that Dicken's complaint contained sufficient allegations to bring the case within the vehicle exception.

The Supreme Court, however, reversed on the basis that the township could not be held liable for the crimes of Horner. Justice Papadakos writing for the Supreme Court opined:

We cannot impose liability for the crimes of Horner on the Township or Officer Bush anymore than we could the City or Youth Study Center in *Mascaro* because the legislative scheme of immunity consistently excludes all criminal acts from liability, including the acts of one ... such as Horner, who choses [sic] to defy a lawful order to stop his car and commits a series of crimes which terminate in inflicting serious injuries to an innocent bystander.... Nor should we overlook the fact that the control of preventing the accident was solely within the hands of Horner who only had to obey the law and stop when requested by the police.

*Dickens,* 531 Pa. at 131–32, 611 A.2d at 695 (citations omitted).

The facts in *Hawks* likewise are very similar to those in the instant case. Hawks attempted to escape a police officer and a high speed chase ensued. In the course of that pursuit, Hawks failed to negotiate a curve, causing her car to strike a telephone pole and roll on to its roof. Hawks sustained severe injuries in the accident. Thereafter, a complaint was filed against the Borough of Evans City and the police officer alleging that the police officer was negligent in pursuing Hawks. The trial court, however, sustained a demurrer filed by the Borough and the police officer, and dismissed the complaint based on governmental immunity.

Analogizing the facts in *Hawks* to those in *Dickens,* we affirmed the trial court. The *Hawks* decision focused on language in *Dickens* explaining that the Legislature has not waived immunity for criminal acts, such as those committed by a fleeing suspect, and language stating that the motorist could have prevented the accident by obeying the law and stopping when requested by the police. We reasoned as follows:

We cannot ignore that it is the fleeing suspect who initiates and continues the chase without regard to the safety of themselves or others. Hawks could have slowed down or stopped her vehicle at any time, accepting the unpleasantness of apprehension. By choosing not to do so and

arguing that the Borough be liable for the resulting accident, she would make governments the insurer of fleeing suspects. Because the Borough is shielded from liability for injuries to innocent third parties as a result of a police chase because of the suspect's criminal actions in fleeing the police, it would be completely inconsistent to allow a fleeing suspect to collect damages from the Borough by ignoring her criminal actions.

*Hawks*, 629 A.2d at 272 (citations omitted).

 Here, Decedent initiated the high speed pursuit and drove his vehicle at speeds estimated to be approximately 80 miles per hour in an attempt to elude the police. The chase went on for miles and involved three different municipalities. Decedent clearly acted with utter disregard of his safety and the safety of others, and could have avoided the fatal accident by simply stopping his car. Therefore, following *Hawks*, we hold that the trial court did not err in concluding that the Municipalities are immune from suit.[3]

Tyree argues that *Hawks* is distinguishable from the instant case, because, unlike the plaintiff in *Hawks*, she alleged in her complaint that the Municipalities engaged in reckless conduct. In essence, Tyree is asserting that, while she cannot recover for negligence under *Hawks*, she could neverthe-

less maintain an action against the Municipalities for reckless conduct. We disagree. The Municipalities are liable under Section 8542(a)(2) of the Code only for certain acts of negligence. *See Petula v. Mellody*, 631 A.2d 762 (1993). Since the Municipalities may be held liable only for reckless conduct to the extent that it is a negligent act,[4] Tyree is raising a distinction without a difference.

 Moreover, while Tyree's complaint alleges that the Municipalities were negligent, careless and/or "reckless," the facts averred therein state only that the Municipalities knew or should have known that their actions created an unreasonable risk of harm to Decedent. The term "reckless" has been defined as follows:

[T]he intentional doing of an act or failure to do an act, which the actor has a duty to do, knowing or having reason to know of facts which would lead a reasonable person to realize that his or her conduct not only creates an unreasonable risk of bodily harm to the other, but also involves a high degree of probability that substantial harm will result.

*Gaul v. Consolidated Rail Corp.* 383 Pa.Superior Ct. 250, 263, 556 A.2d 892, 898, *petition for allowance of appeal denied*, 524 Pa. 621, 571 A.2d 383 (1989). Tyree did not aver

---

3. Even disregarding Decedent's criminal and negligent behavior, we would hold that this case is outside of the vehicle exception. Under that exception, it is the "operation" of a motor vehicle by a local agency which must cause harm to a plaintiff; operation means putting the vehicle, or some part of it, in motion. *Love; Sonnenberg v. Erie Metropolitan Transit Authority*, 137 Pa. Cmwlth. 533, 586 A.2d 1026 (1991).

The allegations in Tyree's complaint focus on the police officers' alleged improper decision to pursue Decedent and the failure of the police to terminate that chase. We stated in *Hawks* that liability attaches only to the police officer's operation of a vehicle and not "the decision to *chase* or *continue to chase* a law violator." *Hawks*, 629 A.2d at 272 n. 6 (emphasis in the original). The record in this matter shows that Decedent was killed when *he* drove his vehicle into a utility pole. Nothing in the record indicates that any vehicle operated by the police officers during the chase made contact with Decedent's vehicle or forced Decedent's vehicle off the road. In fact, Officer Paul Johnson of the Mt. Lebanon police department, the pursuing officer nearest to Decedent, stated in his affidavit that he never even got

close to Decedent's vehicle and merely tried to keep Decedent's vehicle in sight.

4. The term "reckless" involves conduct which has been described as quasi-intentional or a form of aggravated negligence; reckless conduct is in a grey area between negligence and intentional torts. W. Page Keeton, Prosser and Keeton on Torts § 34 (1984). In *Kearney v. City of Philadelphia*, 150 Pa.Cmwlth. 517, 616 A.2d 72 (1992), *petition for allowance of appeal denied*, 534 Pa. 643, 626 A.2d 1160 (1993), and *Steiner v. City of Pittsburgh*, 97 Pa.Cmwlth. 440, 509 A.2d 1368 (1986), we held that the terms "wanton" and "reckless," as used by the plaintiffs, implied willful and intentional conduct rather than negligence, and, therefore, the local agency was immune from suit. Further, if "reckless" is construed as an aggravated form of negligence, the use of that term by Tyree makes no difference here, since the Municipalities, regardless of the level of aggravation, are alleged to have committed negligent acts. *See Ferrick Excavating and Grading Co. v. Senger Trucking Co.*, 506 Pa. 181, 484 A.2d 744 (1984) (Pennsylvania does not recognize different degrees of negligence).

that the Municipalities knew that there was a high degree of probability that Decedent would be harmed in the chase; nor did her averments suggest that the Municipalities created a risk of harm to Decedent substantially greater than that which would make their conduct merely negligent. Therefore, in the absence of specific averments in her complaint indicating that the Municipalities were reckless, this argument must fail. Restatement (Second) of Torts § 500 (1965).

 Next, Tyree argues that *Hawks* does not apply in this case, because *she* did not attempt to elude the police and is thus an innocent beneficiary. In Tyree's view, she should be permitted to pursue a wrongful death action against the Municipalities, regardless of Decedent's actions, and to deny her the right to maintain this suit is contrary to public policy. Section 8301 of the Code, 42 Pa.C.S. § 8301, commonly known as the Wrongful Death Act, allows a decedent's beneficiaries or, in the absence of an eligible beneficiary, the decedent's personal representative, to recover damages for the decedent's death, where no action was brought by the decedent during his or her lifetime. The cause of action for wrongful death is a derivative one, and no action for wrongful death may be maintained where the decedent, had he or she lived, could not have recovered for the injuries inflicted by the alleged tort-feasor. *Ingenito v. AC & S, Inc.*, 430 Pa.Superior Ct. 129, 633 A.2d 1172 (1993). In the instant case, because Decedent may not prevail against the Municipalities under our holding in *Hawks,* Tyree, as a matter of law, is unable to recover. Tyree's innocence in this matter is, therefore, irrelevant. Moreover, in our view, it would be contrary to public policy to allow Tyree to prosecute a wrongful death action, when Decedent, if he had lived, could not have recovered under a similar theory.

Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, December 29, 1995, the orders of the Court of Common Pleas of Allegheny County in the above-captioned matter are hereby affirmed.