Alice K. REGESTER, in her own right and as Administratrix of the Estate of George E. Regester, III and Gary W. Regester and George E. Regester, IV and Stephen H. Regester and Patricia J. Regester and Marykay Piergalline and Dolores R. Chandler, Appellants,

v.

LONGWOOD AMBULANCE COMPANY, INC. and Southern Chester County Medical Center.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1999.

Decided April 5, 2000.

Reargument and Rehearing Denied June 8, 2000.

Thomas D. Schneider, Media, for appellants.

Barbara S. Magen, Philadelphia, for appellee, Southern Chester County Medical Center.

Before DOYLE, President Judge, FLAHERTY, J., and McCLOSKEY, Senior Judge.

OPINION

FLAHERTY, Judge.

Alice K Regester, in her own right and as Administratrix of the Estate of George

E. Regester, III, et al. (collectively Regester), appeal from an order of the Court of Common Pleas of Chester County (trial court) which granted summary judgement in favor of Longwood Fire Company (Longwood) Inc., and Southern Chester County Medical Center (Medical Center).[1] We affirm in part and reverse in part.

Longwood is a Pennsylvania corporation which is the volunteer fire company for Kennet Township. Longwood also provides ambulance service and responds to the Chester County Emergency Services 911 System. Longwood's geographical area of responsibility includes the address of George Regester. The Medical Center is a Pennsylvania corporation. The Medical Center is a hospital and provides, among other services, mobile critical care medical services, which includes Paramedic Unit 94–3 which responds to Chester County Emergency Service 911 transmissions.

George Regester suffered a heart attack on September 8, 1996 at 7:07 p.m. His family called Chester County 911 and began administering cardiopulmonary resuscitation and restored George Regester's pulse. The 911 dispatcher called Longwood and the Medical Center at 7:15 p.m. In response, both Longwood and the Medical Center dispatched their paramedics. Although the County 911 Dispatcher repeated directions to the Regester home twice, neither the paramedics from Longwood nor from the Medical Center followed the directions to the Regester home given to them. Instead, they inexplicably traveled to the southern end of the county and as such did not reach the Regester home until approximately 7:30 p.m. Normal travel time for the paramedics to reach the Regester home from their bases would have been 3–4 minutes. Although George Regester survived the cardiac ar-

rest, at 7:27 p.m., he vomited and choked to death on his vomit.

Regester filed a complaint against, among others, Longwood and the Medical Center alleging that had the paramedics followed the directions given to them by the 911 dispatcher, George Regester's airway would have been secured by intubation and his ability to survive would not have been compromised. Regester also noted that on December 4, 1995, only 9 months prior to September 8, 1996, the date of the fatal heart attack, George had suffered a prior heart attack and the Medical Center's paramedics had responded to the Regester home.

Longwood filed a motion for summary judgment asserting that it was immune from suit based on its status as a local agency and the immunity provided to local agencies under the popularly called Political Subdivision Torts Claim Act, 42 Pa.C.S. §§ 8541 – 8542. The trial court granted this motion after reconsideration by order dated September 18, 1998. The Medical Center moved for summary judgment based upon the defense of the Emergency Medical Services Act, Act of July 3, 1985, P.L. 164, 35 P.S. §§ 6921–6938 (EMSA). The Medical Center alleged that it was immune pursuant to Section 11 of EMSA, 35 P.S. § 6931(j)(2), absent an allegation of gross or willful negligence. *See* Medical Center's Motion for Summary Judgment, Reproduced Record at 153a. Section 11 of EMSA, 35 P.S. § 6931(j)(2) provides that

> No emergency medical technician or EMT-paramedic or health professional who in good faith attempts to render or facilitate emergency medical care authorized by this act shall be liable for damages as a result of any acts or omissions, unless guilty of gross or willful negligence. This provision shall apply to stu-

---

1. Although the caption lists "Longwood Ambulance Company, Inc.," there is no such creature. Longwood's brief at p. 2. The parties have not sought to amend the caption. Moreover, the parties have not raised the issue of whether Longwood, if it were merely a

volunteer ambulance company, as opposed to a volunteer fire company, would be immune. The parties do not cite nor even mention *Scrima v. Swissvale Area Emergency Service,* 143 Pa.Cmwlth. 500, 599 A.2d 301 (1991). Accordingly, this issue is not before us.

dents enrolled in approved courses of instruction and supervised pursuant to rules and regulations.

In response to the Medical Center's summary judgment motion, Regester sought leave to amend the complaint to include allegations of gross or willful negligence. On January 21, 1999, in its order granting the Medical Center's motion for summary judgment, the trial court denied Regester's motion to amend the complaint to include allegations of gross or willful negligence.

■ From the trial court's grant of summary judgment in favor of Longwood and the Medical Center, Regester appeals to this court. Appellate review over the grant or denial of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *A. Pickett Construction, Inc. v. Luzerne County Convention Center Authority*, 738 A.2d 20 (Pa.Cmwlth.1999).

The first issue raised by Regester is whether the trial court erred when it concluded that the Medical Center was entitled to immunity under Section 11 of EMSA, 35 P.S. § 6931(j)(2), where the Medical Center is not a licensed entity pursuant to that provision.

Essentially, Regester argues that 35 P.S. § 6931(j)(2) by its plain language covers only those individuals enumerated therein, namely, emergency medical technicians, EMT-paramedics and health professionals. Because the Medical Center is not one of these, EMSA does not protect it from liability according to Regester.

The trial court found that the immunity provided by EMSA for the enumerated individuals applies to the employer of the enumerated individuals as well as to the specifically enumerated individuals. In doing so, the trial court relied upon *D'Amico v. VFW Post 191 Volunteer Ambulance Association*, 8 Pa. D. & C. 4th 113, 1990 WL 310635 (C.P.1990), *aff'd*, 413 Pa.Super. 660, 596 A.2d 256 (1991)(without published opinion). In *D'Amico*, the estate of a de-

ceased individual sued a volunteer ambulance service. The ambulance service argued that it fell within the protections of EMSA. The estate argued that EMSA contained no limitation of liability in favor of an ambulance service. The trial court in *D'Amico* held the ambulance service to be within the protections of EMSA.

The Medical Center argues that the legislative intent in enacting EMSA was to establish and maintain an effective and efficient emergency medical services system and that the object of court construction of statutes is to effectuate the legislative intent. The Medical Center urges that it would further this legislative intent if this Court construed EMS to include the Medical Center within its coverage. Specifically, the Medical Center argues that

it appears self evident that the Emergency Medical Services Act provides immunity from civil liability to emergency medical personnel due, in large part, to the nature of the work as well as to this Commonwealth's ongoing interest in establishing, and maintaining, an effective and efficient emergency medical services system. Hence, as in *D'Amico*, to provide immunity to employees, but not to hospitals, medical centers and other healthcare entities, would be nonsensical. Therefore, as in *D'Amico*, SCCMC [the Medical Center] is entitled to the protections afforded emergency healthcare providers under the Act. Only by protecting those entities which employ emergency services workers can the purposes of the Act be effectuated.

Medical Center's brief at pp. 20–21.

■ Given the Medical Center's Motion for Summary Judgment below, we are confronted with the question of whether 35 P.S. § 6931(j)(2) covers the Medical Center. In order to determine this, our first inquiry is whether the language of 35 P.S. § 6931(j)(2) provides such protection. *See Hoy v. Angelone*, 554 Pa. 134, 140, 720 A.2d 745, 748 (1998)("As with all statutory

construction, our analysis begins with the language of the statute.") The operative terms of § 6931(j)(2) are all defined by EMSA. An "Emergency medical technician" is defined as "[a]n individual who is trained to provide emergency medical services and is certified as such by the department [i.e., the Department of Health of the Commonwealth] in accordance with the current national standard curriculum for basic emergency medical technicians...." 35 P.S. § 6923. An "Emergency medical technician-paramedic" referred to as an "EMT-paramedic" is defined as "[a]n emergency medical technician specifically trained to provide advanced life support services who is certified as such by the department in accordance with the current national standard curriculum for emergency medical technician-paramedics...." Section 3 of EMSA, Act of July 3, 1985, P.L. 164, *as amended,* 35 P.S. § 6923 "Health professional" is defined as a "licensed physician or professional registered nurse who has education and continuing education in advanced life support and pre-hospital care." None of these definitions includes a hospital. Moreover we note that the legislature was not unmindful of hospitals in enacting EMSA. The legislature specifically provided for a definition of hospital as being "[a]n institution having an organized medical staff which is primarily engaged in providing to inpatients, by or under the supervision of physicians, diagnostic and therapeutic services or rehabilitation services...." Our review of the plain language leads to the conclusion that the Medical Center as a "hospital" is not included within the language of 35 P.S. § 6931(j)(2). The Medical Center does not argue otherwise, but instead urges this court to consider the legislative intent in enacting EMSA so as to engage in the task of statutory construction leading to the conclusion that 35 P.S. § 6931(j)(2) includes hospitals within it protections. Because the plain language of the statute is unambiguous, the law prohibits this court from doing so. *See, e.g., Primiano v. City of Philadelphia,* 739 A.2d 1172 (Pa. Cmwlth.1999)

The Medical Center's invitation to consider the legislature's intent in enacting EMSA so as to include hospitals within the ambit of § 6931(j)(2) when the plain language does not include hospitals runs afoul of the rule that courts are not to utilize rules of statutory construction, including trying to ascertain the intent of the legislature, when the words of the statute are not ambiguous. *See Primiano v. City of Philadelphia,* 739 A.2d at 1176 ("Principles of statutory construction are applicable only when the language of the statute is ambiguous."). *See also Big B Mining Co. v. Department of Environmental Resources,* 142 Pa.Cmwlth. 215, 597 A.2d 202, 203 (1991), *allocatur denied,* 529 Pa. 652, 602 A.2d 862 (1992)("It is axiomatic that we cannot rely upon congressional or legislative intent when there is no ambiguity in the statute being interpreted."). The rationale for this rule is that the words utilized by the legislature are the best evidence of what the legislature intends. *See, e.g., Guinn v. Alburtis Fire Co.,* 531 Pa. 500, 502, 614 A.2d 218, 220 (1992)("The best indication of legislative intent regarding the scope of [immunity provided by 42 Pa.C.S.] Section 8541 is the plain language of the statute.") Here, the Medical Center does not assert that 35 P.S. § 6931(j)(2) is ambiguous, and we do not find that it is ambiguous. Thus going beyond the words to try to ascertain whether the legislature intended to include hospitals within the ambit of § 6931(j)(2) is unnecessary where the words make clear that the legislature did not so intend. This is all the more true in the face of the explicit definitions of the operative terms contained in § 6931(j)(2) that the legislature provided. *See, e.g., McGilley v. Chubb & Son, Inc.,* 369 Pa.Super. 547, 535 A.2d 1070, 1077 (1987), *allocatur denied,* 520 Pa. 606, 553 A.2d 969 (1988)("As with any statute... we look first to the express language of the statute to determine the intent of the legislature.... However, where the statute expressly defines what a term means,

the legislature has created its own dictionary and the meaning of the term as defined excludes any other meaning.").[2]

Because the trial court held that the Medical Center was within the protections of the language of 35 P.S. P.S. § 6931(j)(2) and the clear language of that section does not so provide, the trial court committed an error of law and the grant of summary judgment to the Medical Center must be reversed.[3]

Next, we address Regester's appeal of the trial court's grant of summary judgment to Longwood. The trial court found that Longwood was entitled to immunity pursuant to the commonly called Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8542 because Longwood as the fire company for the Kennet Township is a "local agency" pursuant to *Wilson v. Dravosburg Volunteer Fire Department No. 1,* 101 Pa.Cmwlth. 284, 516 A.2d 100 (1986).

■ Regester argues that Longwood cannot be a "local agency" within the meaning of 42 Pa.C.S. § 8541 because in

---

**2.** Furthermore, we reject the Medical Center's invitation to follow *D'Amico* for several reasons. *D'Amico* is not binding precedent for either this Court nor for the Superior Court. *In re Superior–Pacific Fund Inc.,* 693 A.2d 248, 253 (Pa.Cmwlth.1997), *allocatur denied,* 550 Pa. 695, 704 A.2d 1384 (1997)(Superior Court cases are not binding precedent for Commonwealth Court); *Reed v. Pennsylvania National Mutual Casualty Ins. Co.,* 342 Pa.Super. 517, 493 A.2d 710, 712 (1985)(Superior Court's per curiam affirmance of a published trial court opinion by memorandum opinion is of no precedential value). In addition, we find the reasoning of the court in *D'Amico* somewhat questionable. Among other flaws in the *D'Amico* opinion, it fails to give sufficient weight to the plain language of the statute.

Likewise we reject the Medical Center's suggestion that this case is analogous to *Farago v. Sacred Heart General Hospital,* 522 Pa. 410, 562 A.2d 300 (1989). In *Farago,* the Court construed Section 114 of the Mental Health Procedures Act (MHPA), Act of July 9, 1976, P.L. 817, *as amended,* 50 P.S. § 7114 to provide immunity for hospitals as well as the agents of the hospitals and others. Section 114 of the MHPA provides in relevant part that

> [i]n the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized **person** who participates in a decision that a person be examined or treated under this act, ... shall not be civilly or criminally liable for such a decision or any of its consequences.

(emphasis added). In *Farago,* the Supreme Court determined that because the MHPA immunity provision used the word "person" and the MHPA did not define that word, the court had to resort to the definitions provided by 1 Pa.C.S. § 1991 which defines "person" to include a "corporation." The court concluded because the hospital was a corporation, the

protections of the MHPA include a hospital. We observe that 35 P.S. § 6931(j)(2), the provision of EMSA at issue herein does not contain the word "person" within its protections and indeed speaks in terms of specific individual persons not corporate persons and that all the operative terms contained therein are defined, unlike in the MHPA. Thus because the language of the MHPA is significantly different from the language of 35 P.S. § 6931(j)(2), the reasoning of *Farago* is simply inapplicable here.

It is true that in *Farago* the Supreme Court stated in dicta that

> [t]o allow an individual to claim immunity under this provision but in turn preclude its employer the same benefit of the immunity would indeed undermine the stated purpose of the limited immunity conferred under the Act. This result would only encourage a plaintiff to circumvent the immunity clause by naming a hospital or facility and not its employees in a lawsuit; a result which would be both absurd and unreasonable.

*Farago,* 522 Pa. at 416–17, 562 A.2d at 303. However, the Supreme Court's dicta in *Farago,* fails to mention the legal rule that a "principal may not raise immunity of agent as a defense to claim based on respondeat superior." *Wicks v. Milzoco Builders,* 481 Pa. 554, 557, n. 2, 393 A.2d 300, 301 n. 2 (1978)(citing Restatement (Second) of Agency § 217). In the face of the holding of *Wicks,* and the clear language of 35 P.S. § 6931(j)(2) we decline to follow the dicta of *Farago. See also Muntan v. City of Monongahela,* 45 Pa.Cmwlth. 23, 406 A.2d 811, 813–14 (1979) (en banc)(employer may be held liable for torts of the employees even if employees are immune from liability).

**3.** Because the other arguments of the Medical Center rely on the assumption that it falls within the protections of 35 P.S. § 6931(j)(2) and we found that it does not, we need not address them.

Longwood's contract with Kennet Township whereby Longwood agrees to "furnish fire and rescue protection to the residents of [Kennet] Township" (R.R. at 100a), there is a paragraph which provides that "[n]otwithstanding anything to the contrary herein, [the Longwood] Fire Company is an independent contractor and shall not be deemed an agency, servant or employee of Township." R.R. at pp. 101a. Regester asserts that because the contract provides that Longwood is an "independent contractor" there is no agency relationship between Longwood and Kennet Township and therefore Longwood cannot be a "local agency." Regester is engaging in the fallacy of equivocation which is just because the same word or form of the same word is used in two different contexts, it must mean the same thing in both contexts. As Longwood points out, simply because under the contract with Kennet Township, Longwood cannot be deemed Kennet's "agent" it does not follow that Longwood cannot be a "local agency" within the meaning of 42 Pa.C.S. § 8541. Local agency status is accorded to volunteer fire companies not because they are otherwise deemed agents of the local government unit under traditional concepts of principal-agency law but rather are traditionally "accorded local agency status because the duties performed by fire fighters are of a public character." *Eger v. Lynch*, 714 A.2d 1149, 1152 (Pa.Cmwlth.1998), *allocatur denied*, —— Pa. ——, —— A.2d ——, 1999 Pa. Lexis 630 (March 12, 1999)("*Eger II*")(citing cases). Hence, merely because the contract may preclude a finding of a principal-agent relationship between Kennet Township and Longwood, it does not follow that Longwood is not a "local agency" within the meaning of 42 Pa.C.S. § 8541. Thus, the existence of the contractual language does not, as a matter of law or of fact, preclude a conclusion that Longwood is a "local agency" contrary to Regester's arguments.

However, Regester next argues that there was a question of material fact as to whether Longwood was the official volunteer fire company because merely introducing the resolution of Kennet Township designating Longwood as such is insufficient to merit the grant of summary judgment. Regester relies upon *Eger II*.

The analysis for determining whether Longwood is a local agency entitled to immunity was set forth in the case of *Guinn* wherein the Supreme Court stated that "a volunteer fire company created pursuant to relevant law and legally recognized as the fire company for a political subdivision is a local agency" within the intendment of 42 Pa.C.S. § 8541. In *Kniaz v. Benton Borough*, 164 Pa.Cmwlth. 109, 642 A.2d 551 (1994) we recognized that the Supreme Court's statement in *Guinn*, set up a two part test asking whether the volunteer fire company was created pursuant to relevant law (which is not presently disputed) and whether the volunteer fire company is legally recognized as the official company for the local political subdivision. It is not necessarily sufficient merely to present into evidence a resolution by the local political subdivision which designates the volunteer company as the company to provide fire services to that political subdivision. *Eger II*, 714 A.2d at 1150. In *Eger v. Lynch*, (No. 1560 C.D.1994, filed March 14, 1996)(unpublished memorandum opinion, disposition of which is noted at 677 A.2d 1335 (Pa. Cmwlth.1996)(*Eger I*)) the volunteer fire company introduced a resolution of the local political subdivision dated from 1939 which designated that volunteer fire company as the provider of fire services for the political subdivision. *See Eger II*, 714 A.2d at 1150 n. 2. However, the incident giving rise to the suit in *Eger I* occurred in 1992, some 53 years after the resolution designating the volunteer fire company as the provider of services for the political subdivision. *Eger II*, 714 A.2d at 1150 (quoting *Eger I*, slip op. at pp. 7–8). The plaintiff asserted that there was a factual issue as to whether **at the time of the accident** giving rise to the litigation the volunteer fire company was the official fire

company of the political subdivision by quoting some 1992 literature from the local political subdivision for the inference that the volunteer fire company was not. *See Eger II*, 714 A.2d at 1150 n. 2. In the face of a factual question as to whether the volunteer fire company was accorded the status of the local political subdivision's official provider of fire services at the time of the incident which gave rise to the case, the court in *Eger I* stated that "a court's inquiry as to whether an entity... is the official entity of a township does not necessarily end with the discovery of a resolution. Rather, a court should also consider evidence pertaining to whether the entity functioned as the official entity **at the time of the incident** giving rise to litigation." *Eger II*, 714 A.2d at 1150, (quoting *Eger I*, slip op. at pp. 7–8)(emphasis added). Thus, this court in *Eger I* vacated the trial court's grant of summary judgment to the volunteer fire company and remanded for the trial court to conduct an evidentiary hearing on whether the fire company was the official fire company of the political subdivision at the relevant time. The trial court upon remand conducted the required hearing and concluded that the fire company was the official fire company of the political subdivision at the time of the incident and again entered summary judgment in favor of the fire company. In *Eger II*, this court affirmed the trial court's grant of summary judgment.

■ Contrary to Regester's contention, we do not find that anything in *Eger II* requires a finding here that Longwood was not entitled to immunity as a local agency. In the case at hand, Longwood introduced the resolution of Kennet Township designating Longwood as its provider of fire protection which was dated January 2, 1996. R.R. at 103a. The incident giving rise to this case occurred on September 8, 1996 which is a significant difference from the facts of the *Eger* case. Moreover, the record here includes the agreement between Longwood and Kennet whereby Longwood agreed to provide fire protection and ambulance services to Kennet. That agreement was dated January 1, 1996 and provided that the agreement was in force from January 1, 1996 until December 1, 1996. Accordingly, unlike in the *Eger* case, there is no factual question as to whether at the time of the incident giving rise to this litigation that Longwood was the official fire company of Kennet. Thus, pursuant to *Guinn*, the two-pronged test was met herein and Longwood was entitled to immunity as a local agency.

Regester argues in the alternative that even if Longwood is entitled to immunity as a local agency, an exception applies herein, namely the exception to immunity found at 42 Pa.C.S. § 8542(b)(1), the so-called vehicle exception. This exception provides in relevant part that

[t]he following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(1) *Vehicle liability.*– The operation of any motor vehicle in the possession or control of local agency ....

Longwood argues that the exception to immunity does not apply because Regester's allegations of negligence relate not to the "operation" of the ambulances involved but rather to other acts of negligence, e.g., negligently failing to follow the correct directions given by the 911 dispatcher to Regester's house. Longwood argues that

nothing about the operation of the emergency vehicle by Longwood Fire Company contributed to Regester's death. Plaintiffs have not claimed that the vehicle was driven negligently such that it was involved in an accident, was driven off the roadway, or in any other fashion some careless act in the movement of the vehicle caused it to be delayed in arrival at the Regester home. Nor is it claimed that the vehicle broke down or was disabled because of some prior negligence in maintenance of the vehicle.

Longwood's brief at p. 10.

Regester responds that Longwood's interpretation of the exception ignores the

recent Supreme Court's construction of the exception in *Mickle v. City of Philadelphia*, 550 Pa. 539, 707 A.2d 1124 (1998) (*Mickle II*). In *Mickle*, the plaintiff, while being transported by a Philadelphia fire vehicle to the hospital, was injured when the rear wheels of the vehicle fell off. The parties stipulated that there was "nothing negligent about the manner in which the firefighter actually drove/operated the fire rescue vehicle" *Mickle II*, 550 Pa. at 541, 707 A.2d at 1125. They also stipulated that the cause of the rear wheels falling off was negligent maintenance and repair of the vehicle by the defendant, City of Philadelphia. Upon the stipulated facts, both the plaintiff and the City of Philadelphia moved for summary judgment. The City of Philadelphia asserted immunity and that the operation of a vehicle exception at 42 Pa.C.S. § 8542(b)(1) was inapplicable. The trial court granted the plaintiff summary judgment. This court affirmed. *Mickle v. City of Philadelphia*, 669 A.2d 520 (Pa.Cmwlth.1996)(*Mickle I*), *aff'd*, 550 Pa. 539, 707 A.2d 1124 (1998). In affirming this court, the Supreme Court reasoned that

> [s]ince there is not dispute that the van was in operation at the time of the accident as required by *Love* [*v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988)] we must determine whether Mickle's injury was caused by the City's **negligent acts with respect to the van's operation.** The City argues that there was no such negligent act because it is undisputed that the firefighter did not drive the van in a negligent manner.
>
> Negligence related to the operation of a vehicle encompasses not only how a person drives but also whether he should be driving a particular vehicle in the first place. The motor vehicle exception does not say that liability may be imposed only where the operator's manner of driving is negligent. Rather, **it requires that the injury is caused by a negligent act with respect to the operation of a motor vehicle.** 42 Pa. Cons.Stat. § 8542(a),(b)(1).

*Mickle II,* 550 Pa. at 543, 707 A.2d at 1126 (both emphases added). The Supreme Court concluded that under the facts of *Mickle,* the City's negligent maintenance and repair of the wheels of the van constituted negligent acts with respect to the operation of a motor vehicle. Thus, we must reject Longwood's contention that merely because its driver did not engage in negligent driving of the ambulance, the operation of motor vehicle exception does not apply. *See Mickle I,* 669 A.2d at 523 ("We believe the trial court correctly reasoned that there is no requirement that the Van be negligently operated at the specific time the injury occurred.") Thus, according to *Mickle II,* because the ambulance here was in operation (i.e., moving pursuant to *Love* ) at the time of Regester's death, we must inquire whether George Regester's death was caused by a negligent act with respect to the operation of a motor vehicle. We must ask whether the failure of the driver of Longwood's ambulance to follow directions to Regester's house was a negligent act with respect to the operation of a motor vehicle. Because Longwood does not dispute that failing to follow directions was negligent, the only issue is whether such failure was an act with respect to the operation of a vehicle.

We conclude that the Longwood paramedics' failure to follow the directions of the 911 dispatcher was not an act with respect to the operation of a vehicle as a matter of law. In so doing we rely upon the analysis of *Keesey v. Longwood Volunteer Fire Company,* 144 Pa.Cmwlth. 466, 601 A.2d 921 (1992), *allocatur denied,* 531 Pa. 642, 611 A.2d 713 (1992), *Tyree v. City of Pittsburgh,* 669 A.2d 487 (Pa.Cmwlth. 1995) and *Hawks by Hawks v. Livermore,* 157 Pa.Cmwlth. 243, 629 A.2d 270 (1993).

In *Keesey,* the allegation was that the county had failed to communicate a direction to the driver of the Longwood fire truck to slow down. As a result, the fire truck caused an accident. The plaintiffs

argued that the county was negligent in failing to communicate the order to the fire truck and that this failure came within the vehicle exception to immunity. This court focused in on the acts of the county in failing to pass on the instruction, finding that the giving of instructions was not the operation of the vehicle.

In *Tyree v. City of Pittsburgh*, 669 A.2d 487 (Pa.Cmwlth.1995) and *Hawks by Hawks v. Livermore*, 157 Pa.Cmwlth. 243, 629 A.2d 270 (1993), plaintiffs were injured when police decided to initiate vehicle chases. The plaintiffs alleged that immunity was not applicable because the vehicle exception applied. This court rejected the plaintiffs' contentions finding that the negligence alleged in the complaints was not so much that the police had operated their vehicles negligently but that the police had negligently decided to engage in pursuit. In *Tyree*, we concluded that

> [t]he allegations in Tyree's complaint focus on the police officers' alleged improper decision to pursue Decedent and the failure of the police to terminate that chase. We stated in *Hawks* that liability attached only to the police officer's operation of a vehicle and not "the decision to *chase* or *continue to chase* a law violator." *Hawks*, 629 A.2d at 272 n. 6 (emphasis in the original [*Hawks* opinion]).

*Tyree*, 669 A.2d at 491 n. 3.

■ Taking these cases together, and keeping in mind that the exceptions to immunity must be narrowly construed, *Love*, we find that the failure of Longwood's paramedics to follow directions was not an act with respect to the actual operation of a vehicle, but rather as in *Keesey*, was an act with respect to the giving and receiving of directions which does not constitute "operation" of a vehicle. Likewise, the decision of the paramedics to not follow the explicit directions given by the 911 dispatcher is similar to the decision of the police in *Tyree* and *Hawks*. Such decisions do not constitute acts with respect to the "operation" of a vehicle.

Because the trial court did not commit an error of law or abuse its discretion in granting the summary judgment motions of Longwood, the trial court's order doing so is affirmed.

### ORDER

AND NOW, this 5th day of April, 2000, the order of the Court of Common Pleas of Chester County, docketed at No. 96–10116, and entered September 18, 1998 granting Longwood Fire Company's motion for summary judgement is affirmed, and the order docketed at No. 965–10116 and entered January 21, 1999, granting Southern Chester County Medical Center's motion for summary judgment, is reversed. This case is remanded to the Court of Common Pleas for further proceedings as to Southern Chester County Medical Center. Jurisdiction is relinquished.