**Dennis WILLIAMS, Plaintiff,**

v.

**Cheryl STURM, Defendant.**

**No. CIV.A. 00–1679.**

United States District Court, E.D. Pennsylvania.

Aug. 17, 2000.

Dennis Williams, pro se, for plaintiff.

Brendan McGlynn, Michael Burns—Christe, Pabarue, Mortensen—Young, Philadelphia, PA, for defendant.

### *ORDER*

DuBOIS, District Judge.

AND NOW, to wit, this 17th day of August, 2000, upon consideration of Defendant Cheryl J. Sturm's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 5, filed May 30, 2000), Plaintiff's Opposition to Defendant's Motion to Dismiss (Document No. 7, filed June 28, 2000), Defendant Cheryl Sturm's Reply Brief in Support of her Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 8, filed July 19, 2000) and Plaintiff's Response to Defendant's Reply Brief (Document No. 9, filed August 11, 2000), for the reasons stated in the attached Memorandum, it is **ORDERED** that Defendant Cheryl J. Sturm's Motion to Dismiss Plain-

tiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** and Plaintiff Dennis Williams' Complaint is **DISMISSED.**

It is **FURTHER ORDERED** that, in the event plaintiff Dennis Williams reasonably concludes that he has a claim based on what is set forth in the attached Memorandum, he is **GRANTED** leave to file an amended complaint in accordance with this Order and Memorandum within 45 days.

### *MEMORANDUM*

In this legal malpractice action, plaintiff Dennis Williams ("plaintiff") asserts a claim against his former attorney, defendant Cheryl Sturm ("defendant"), arising out of the preparation and filing of a motion to vacate sentence pursuant to 28 U.S.C. § 2255 (" § 2255"). Presently before the Court is defendant's motion to dismiss plaintiff's complaint.

### I. BACKGROUND

On May 4, 1989, plaintiff was convicted in the United States District Court for the District of Maryland of conspiracy to distribute 500 grams or more of cocaine base in violation of 21 U.S.C. § 841. Plaintiff's defense attorney filed an appeal and an *Anders* brief[1] asserting there existed no grounds for appeal. Plaintiff then filed a pro se brief arguing there was no evidence that his crime involved more than 500 grams of cocaine. The United States Court of Appeals for the Fourth Circuit affirmed the judgment of the District Court on November 15, 1990, and, on February 19, 1991, the Supreme Court denied certiorari.

On October 15, 1992, plaintiff filed a pro se § 2255 Motion to Vacate Sentence in the District Court for the District of Maryland. That court denied plaintiff's motion on September 16, 1993 and the Fourth Circuit affirmed that decision on February 17, 1994.

Plaintiff subsequently retained defendant to prepare an opinion letter explaining what issues he could raise in a motion to vacate sentence pursuant to § 2255. On April 21, 1994, defendant sent plaintiff an opinion letter informing him that his recourse was to attack his conviction and/or sentence by filing a Motion to Vacate, Set Aside or Correct Sentence pursuant to § 2255.

Plaintiff asked defendant to prepare his § 2255 motion. In response, on November 11, 1994, defendant wrote plaintiff a letter in which she informed him that the United States Sentencing Commission was conducting a study as to whether the United States Sentencing Guidelines for offenses involving crack cocaine should be changed and the Commission was due to report to Congress by December 31, 1994. Defendant advised plaintiff not to file anything with the court until the Sentencing Commission presented its report to Congress.

On January 12, 1995, defendant sent plaintiff a draft of the § 2255 motion she intended to file on his behalf. In a letter accompanying the draft, defendant asked plaintiff to review the motion and respond with any comments. She also told plaintiff that the Sentencing Commission report on the Sentencing Guidelines for crack was delayed and was scheduled to be released to Congress on March 1, 1995. Defendant again recommended that plaintiff wait for this report before filing his § 2255 motion with the court.

On November 20, 1995, plaintiff sent defendant a letter asking her file his § 2255 motion. On November 25, 1995, plaintiff sent defendant a letter asking her to include a request for an evidentiary hearing in the motion. On March 11, 1996, defendant sent plaintiff a revised copy of the motion she intended to file on his behalf. In a letter accompanying the copy,

---

**1.** *See Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (holding that appellate counsel may seek leave of court to withdraw from representation of an indigent defendant where, after a conscientious examination of the record, counsel is of the opinion that the appeal is wholly frivolous).

defendant instructed plaintiff to date the signature pages and return them to her.

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. 104–132, 110 Stat. 1217 (1996), took effect, requiring certification by an appropriate appellate court that a second or successive motion filed under § 2255 contains (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense or (2) a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable. *See* 28 U.S.C. §§ 2244, 2255.

On June 28, 1996, defendant filed plaintiff's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 in the United States District Court for the District of Maryland (the " § 2255 motion"). On October 3, 1996, that court denied plaintiff's motion on the grounds that plaintiff failed to present the motion to the Fourth Circuit for certification, plaintiff's motion did not contain either newly discovered evidence or a new rule of constitutional law as required under the AEDPA, and one of plaintiff's claims had previously been decided by the Fourth Circuit and was not a constitutional issue rising to a violation of due process.

On July 2, 1997, defendant filed an Application for Leave to File a Second or Successive 2255 Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. Section 2255 with the Fourth Circuit. The Fourth Circuit denied the motion in an Order dated August 27, 1997.

On March 29, 2000, plaintiff filed a Complaint in this Court asserting a claim for legal malpractice. Defendant filed a motion to dismiss plaintiff's complaint on May 30, 2000. Plaintiff filed a response on June 28, 2000. Defendant filed a reply on July 19, 2000; plaintiff filed a response to the reply on August 11, 2000.

## II. STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), a court must take all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The court may only consider those facts alleged in the complaint and any attached documents in considering such a motion. *See In re Burlington Coat Factory Sec. Lit.,* 114 F.3d 1410, 1424–25 (3d Cir.1997). When considering the sufficiency of a pro se plaintiff's complaint, the Court must be mindful that pro se plaintiffs are not held to as high a pleading standard as other litigants and pro se pleadings must be construed liberally. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Lumumba v. Philadelphia Dept. of Human Services,* No. Civ. A. 98–5195, 1999 WL 345501 (E.D.Pa. May 21, 1999). A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## III. DISCUSSION

▉ Legal malpractice claims in Pennsylvania can sound in trespass—negligence—or assumpsit—contract. *See Bailey v. Tucker,* 533 Pa. 237, 245, 621 A.2d 108 (1993). In his Complaint, plaintiff does not specify which of these causes of action he is asserting. A legal malpractice claim under a trespass theory requires a plaintiff to prove, inter alia, an attorney failed to exercise ordinary skill and knowledge expected of an attorney. *See Bailey v. Tucker,* 533 Pa. 237, 246, 621 A.2d 108 (1993). To sustain a claim of legal malpractice in assumpsit, "a plaintiff must show[, inter alia,] that the lawyer failed to follow the client's specific instructions or otherwise breached a specific provision of the contract and may not rely upon evidence that the lawyer

merely breached the general, non-contractually created duty of care." *Svarzbein v. Saidel*, 1999 WL 729260, at *9 (E.D.Pa. Sept.10, 1999) (citing *Rogers v. Williams*, 420 Pa.Super. 396, 616 A.2d 1031, 1033 (1992)).

■ Plaintiff alleges in his Complaint that defendant "is legally negligent for her failure to exercise a responsible level of performance which is expected by the public at large of a Criminal Defense Attorney admitted to practice in the Federal District Courts of the United States which resulted in her 'Nonfeasance' of a duty to her client...." Complaint, ¶ 39. He does not allege that defendant failed to follow his specific instructions or that she in some other way breached a specific provision of the contract between them. The Court concludes that plaintiff's allegations sound in negligence and will treat plaintiff's Complaint as purporting to assert a cause of action in trespass.

■ Under Pennsylvania law, the elements of a legal malpractice claim sounding in tort vary based on whether the underlying representation was in a civil or criminal context. *See Bailey*, 533 Pa. at 246, 250–51, 621 A.2d 108. A legal malpractice action arising out of a civil representation requires a plaintiff to prove: (1) employment of the attorney or another basis for a duty; (2) failure of the attorney to exercise ordinary skill and knowledge; and, (3) that such failure was the proximate cause of damage to the plaintiff. *See id.* at 246, 621 A.2d 108. A plaintiff seeking "to bring a trespass action against a criminal defense attorney, resulting from his or her representation of the plaintiff in criminal proceedings, must establish the following elements: (1) The employment of the attorney; (2) Reckless or wanton disregard of the defendant's interest on the part of the attorney; (3) the attorney's culpable conduct was the proximate cause of an injury suffered by the defendant/plaintiff, i.e., 'but for' the attorney's conduct, the defendant/plaintiff would have obtained an acquittal or a complete dismissal of the charges. (4) As a result of the injury, the criminal defendant/plaintiff suffered damages. (5) Moreover, a plaintiff will not prevail in an action in criminal malpractice unless and until he has pursued post-trial remedies and obtained relief which was dependent upon attorney error." *Id.* at 250–51, 621 A.2d 108.

■ Which of the two sets of elements apply to a legal malpractice action arising out of a habeas corpus petition in federal court appears to be a novel question in Pennsylvania. When a state's highest court has not addressed the precise question presented in a diversity action, a federal court must predict how the state's highest court would resolve the issue. *See Paolella v. Browning–Ferris, Inc.*, 158 F.3d 183, 189 (3d Cir.1998). Absent a definitive statement of the applicable law by the state's highest court, a district court may also consider the decisions of state intermediate appellate courts in order to facilitate its prediction. *See id.*

■ In their memoranda of law supporting and opposing the motion to dismiss, defendant and plaintiff assume without discussion that the elements of a legal malpractice action in a criminal matter apply to this case. The issue is not as clear-cut as the parties assume.

Both federal and Pennsylvania courts have characterized habeas corpus as a civil remedy. *See, e.g., Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1606, 146 L.Ed.2d 542 (2000) (applying Fed.R.Civ.P. 41 to habeas corpus claims in federal court); *Henderson v. Frank*, 155 F.3d 159, 167 (3d Cir.1998) (habeas corpus in federal court is a civil proceeding); *Commonwealth v. DiVentura*, 1999 PA Super 124, 734 A.2d 397, 398 (1999) (in Pennsylvania courts, claims for habeas corpus are civil claims); *Commonwealth v. McNeil*, 445 Pa.Super. 526, 665 A.2d 1247, 1249–50 (1995) (same). Despite these characterizations, at least one Pennsylvania court has applied the elements of a legal malpractice action in a criminal matter to a legal malpractice ac-

tion arising out of representation in a case brought under the Post Conviction Relief Act ("PCRA"), 42. Pa.C.S.A. §§ 9541–46—Pennsylvania's habeas corpus statute.[2] *See Slaughter v. Rushing,* 453 Pa.Super. 379, 683 A.2d 1234 (1996).

*Slaughter* was a legal malpractice case brought by a former criminal defendant against two attorneys—one who represented him for purposes of "post-plea" proceedings and one who represented him in raising a challenge to his guilty plea under the PCRA. *See id.* at 1234. The *Slaughter* court applied the elements of a legal malpractice action arising out of a criminal representation to both defendants without discussing the question of whether representation in the PCRA context constitutes representation in a civil or a criminal context for purposes of legal malpractice. *See id.* at 1235–36.

The *Slaughter* court's application of the elements of a legal malpractice action in a criminal context to the PCRA setting is consistent with the concerns that caused the *Bailey* court to draw a distinction between legal malpractice arising out of a civil and a criminal context. The *Bailey* court was concerned that the threat of legal malpractice looming over criminal defense attorneys would "result [in] a diminution of defense counsels' willingness to exercise independent legal judgment, to be replaced by a defensive mindset geared more toward avoiding malpractice, and less toward obtaining acquittals." 533 Pa. at 249, 621 A.2d 108. The *Bailey* court discussed the effect of defense attorneys protecting themselves from legal malpractice, concluding that "in our already overburdened system, it behooves no one to encourage the additional expenditure or resources merely to build a record against a potential malpractice claim." *Id.*

In addition to the above issues, the *Bailey* court expressed concern about three consequences of subjecting criminal defense attorneys to legal malpractice liability to the same extent as civil attorneys: (1) availability of actions by defendants in criminal cases against their former attorneys would provide a powerful disincentive to practitioners in the field to continue in that field; (2) the proliferation of such suits would increase insurance premiums for such practitioners; and, (3) such costs would be passed on to the system at large because there would be fewer attorneys to represent a greater number of clients, and the cost of retaining such attorneys would inevitably rise. *See* 533 pa. at 249–250.

Finally, the *Bailey* court noted that a client accused of a crime occupies a different position vis-a-vis a civil client because, unlike civil litigation, "a client does not come before the criminal justice system alone; he comes with a full panoply of rights, powers, and privileges. These rights and privileges not only protect the client from abuses of the system but are designed to protect the client from a deficient representative." *Id.* at 250, 621 A.2d 108. Based on all of these concerns, the *Bailey* court held that "criminal malpractice trespass actions are distinct from civil legal malpractice trespass actions . . . ." *Id.*

The concerns expressed by the *Bailey* court apply in the context of collateral attacks on a conviction as well as to the initial representation of a criminal defendant. Less than five percent of habeas corpus motions in federal court are successful. *See* Barry Latzer, *Whose Federalism? Or, Why "Conservative" States Should Develop Their State Constitutional Law,* 61 Alb. L.Rev. 1399, 1402 n.17 (1998). If attorneys are potentially subject to legal malpractice liability for every failed habeas corpus petition, there is an increased likeli-

---

**2.** The PCRA provides, in relevant part, "This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis." 42 Pa.C.S.A. § 9542 (West 2000).

hood that they will prepare and prosecute such cases with an eye toward protecting themselves from malpractice liability. Moreover, availability of an action by a habeas corpus petitioner against his counsel will provide a disincentive to practitioners to take such cases. For these reasons, the Court concludes that, if faced with the question, the Pennsylvania Supreme Court would apply the elements of a legal malpractice action in the criminal context to a case arising out of the preparation and filing of a habeas corpus motion, and will apply those elements to plaintiff's claim in this case.

Defendant argues that plaintiff has not alleged facts sufficient to establish: (1) that defendant acted recklessly or with wanton disregard of plaintiff's interest; (2) that but for defendant's conduct, plaintiff would have obtained a complete dismissal of the charges; or, (3) that plaintiff has pursued post-trial remedies and obtained relief which was dependent upon attorney error. Defendant also argues that plaintiff's claims are barred by the doctrine of collateral estoppel. The Court will address those arguments in turn.

■ Plaintiff alleges in the Complaint that defendant is liable because she failed to file his § 2255 motion before the effective date of the AEDPA and, as a result, plaintiff lost his opportunity to challenge his conviction. To determine whether such conduct rises to the level of recklessness, courts look to § 500 of the Restatement (Second) of Torts. *See, e.g., Taylor v. Albert Einstein Med. Ctr.*, 723 A.2d 1027, 1037 (Pa.Super.1998), *rev'd* on other grounds, 754 A.2d 650, 2000 WL 630999 (Pa. May 17, 2000); *Tyree v. City of Pittsburgh*, 669 A.2d 487, 492 (Pa.Cmwlth.1995).

Reckless misconduct differs from negligence is several important particulars. It differs from that form of negligence which constitutes a mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reck-

less misconduct requires a conscious choice of a course of action, either with knowledge or the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.... The difference between reckless misconduct and conduct involving only such a quantum or risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind. Restatement (Second) of Torts, § 500, comment g.

Plaintiff does not allege that defendant had knowledge which would have disclosed to any reasonable attorney the risk that plaintiff's § 2255 motion would be deemed a successive motion under the AEDPA, subject to the more stringent requirements for such motions, or that she consciously disregarded such risk. At most, plaintiff alleges that defendant delayed filing the § 2255 motion until after the effective date of the AEDPA and that such delay amounted to unskillfulness, incompetence and/or a failure to take adequate precautions—the characteristics of negligence listed in the Restatement. The Court concludes that plaintiff's allegations fail to rise to the level of recklessness or wanton disregard of plaintiff's interests.

■ With respect to defendant's argument that plaintiff's claim should be dismissed because he has not alleged his innocence, a plaintiff in a legal malpractice action arising out of a criminal matter is required to allege that but for a defendant's culpable conduct, he would have obtained an acquittal or a complete dismissal of the charges against him. To establish such causation, "a plaintiff must prove...that he did not commit any unlawful acts with which he was charged as well as any lesser offenses included therein." *Bailey*, 533 Pa. at 248, 621 A.2d 108. Where a plaintiff fails to allege in a complaint that he is innocent of all the charges against him, he has not stated a cause of

action for legal malpractice in the criminal context under Pennsylvania law. *See Slaughter*, 683 A.2d at 1236.

Plaintiff has not alleged in his Complaint that he is innocent of all the charges against him. Instead, he alleges only that defendant's negligence caused him to "forfeit his right to challenge his sentence and conviction within the period prior to the enactment of the 'AEDPA.'" Complaint, ¶ 38. The Court concludes that such allegations are insufficient to state a cause of action for legal malpractice arising out of a criminal representation.

 Defendant also argues that plaintiff's claim is barred because he has not pursued post trial remedies and obtained relief which was dependent upon attorney error. Plaintiff does not allege in his Complaint that he has exhausted his post-trial remedies or that he obtained relief on the basis of attorney error.[3] For these additional reasons, the Court concludes plaintiff's allegations are insufficient to state a cause of action for legal malpractice arising out of a criminal representation.

For all the reasons set forth above, the Court concludes that plaintiff failed to allege in his Complaint facts sufficient to support a cause of action for legal malpractice arising out of representation in a criminal matter and need not reach the question of collateral estoppel. Accordingly, the Court grants defendant's motion to dismiss.

## IV. CONCLUSION

Plaintiff failed to allege in his·Complaint facts sufficient to state a cause of action under Pennsylvania law for legal malpractice arising out of a criminal representation. Thus, defendant's motion to dismiss is granted. In the event plaintiff reasonably concludes that he has a claim based on

what is set forth in this Memorandum, he is granted leave to file an amended complaint within 45 days. Any such amended complaint must comply in all respects with the requirements of a legal malpractice action arising out of a criminal matter.

---

**3.** The *Bailey* court held that, where a plaintiff files a claim before post-trial remedies are exhausted, the trial court should reserve ruling on a preliminary objection until the resolution of post-conviction criminal proceedings. Although federal courts are bound to apply state substantive law in diversity actions, federal procedural law will govern. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Accordingly, the Court need not follow such a procedure in this case, and it chooses not to do so.